1    **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9    Jesus Encinas, Jr.,                    No. CV11-01063-PHX-DGC

10                    Plaintiff,            **ORDER**

11   vs.

12   Michael J. Astrue, Commissioner of Social
     Security,

13                    Defendant.

14

15          Plaintiff Jesus Encinas, Jr. filed an application for disability insurance benefits

16   ("DIB") and supplemental security income ("SSI") on June 6, 2007, alleging a disability

17   onset date of January 12, 2007.  Tr. 146-52.  After an administrative hearing on April 16,

18   2010 (Tr. 25-64), the administrative law judge ("ALJ") denied Plaintiff's claims on

19   April 22, 2010 (Tr. 12-24).  On March 29, 2011, the Appeals Council denied Plaintiff's

20   request for review (Tr. 1-6), making the ALJ's decision the final decision of Defendant

21   for the purposes of judicial review.  *See* 20 C.F.R. § 422.210(a).  Plaintiff commenced

22   this action for judicial review pursuant to 42 U.S.C. § 405(g).  Doc. 14.  For the reasons

23   that follow, the Court will reverse Defendant's decision and remand the case for an award

24   of benefits.[1]

25

26   _____

27          [1] Plaintiff's request for oral argument (Docs. 14, 18) is denied because the issues
     are fully briefed and argument will not aid the Court's decision.  *See* Fed. R. Civ. P.
28   78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

**I.      Background.**

     **A.      Summary of Medical Evidence.**

Plaintiff was born on February 11, 1973 (Tr. 150) and testified that he completed the ninth grade (Tr. 29).[2]  He has worked as a warehouse delivery person and as a security guard.  Tr. 30.  On October 20, 2006, Plaintiff received treatment at Maricopa Integrated Health System.  He was diagnosed with uncontrolled diabetes, depression, non-compliance, and domestic violence.  Tr. 325.  He was subsequently referred for a psychological evaluation.  Tr. 676.

In January 2007, Plaintiff went to the emergency room and reported low back pain for the past one or two days.  Tr. 423.  He was assessed with a pinched nerve in his back, and was prescribed narcotic medication.  Tr. 284.  A January 12, 2007 x-ray found bilateral spondylolysis at the L5 level with Grade I spondylolisthesis of L5 on S1, mild to moderate disc space narrowing at the L5-S1 level, no destructive bony lesion, and no acute fracture or subluxation.  Tr. 688.  A January 18, 2007 MRI showed Grade I spondylolisthesis on L5 of S1, and protrusion of disc material and moderate narrowing of the spinal canal.  Tr. 587-88.  On February 13, 2007, a health care provider opined that Plaintiff should limit sitting to eight hours per day, and should not lift, pull, or push more than 10 pounds.  Tr. 287-90.

During this time period, Plaintiff had elevated blood sugar.  He stated that he did not regularly check his blood sugar at home.  A health care provider adjusted his diabetes medication and ordered a new glucometer for home use.  Tr. 577, 653.  Plaintiff and his wife were advised about insulin shots, diet, and exercise as means of treating diabetes, and a care provider noted that they verbalized good understanding.  Tr. 560-62.

On February 21, 2007, Plaintiff received treatment from Dr. Ehab Abdalah at West Valley Orthopedics.  Plaintiff reported that pain started on January 12, 2007, when he fell at home.  He used a can for walking due to the pain, and wanted to go back to

---

[2] Plaintiff's disability report indicates that he completed the eleventh grade. Tr. 174.

work.  He reported tingling and numbness to his lower back, and prolonged history of diabetic neuropathy.  Tr. 526-27.  On examination, Plaintiff had tenderness and reduced range of motion in his lower back, reduced sensation, and rated 4+/5 on motor skills.  *Id.* at 527.  Dr. Abdallah diagnosed Plaintiff with acute low back pain, spondylosis, and spondylisthesis, and prescribed physical therapy and medication.  *Id.*

Plaintiff attended physical therapy from March 6, 2007 through July 12, 2007.  In May 2007, Plaintiff reported improvement and the physical therapist noted good progress toward his goals.  Tr. 371-72, 373-74.  He had significant bilateral hamstring and hip flexor tightness, reduced range of motion in his lumbar spine, hypermobility at L2-L5 with decreased lumbar spine lordosis, and bilateral lumbar spine paraspinal tightness.  Tr. 710, 712, 714.  At the time of Plaintiff's discharge from physical therapy, he had only partially improved and had not fully returned to his prior functional level, had achieved 75% of his functional goals, and his physical therapist released him to return to work without restrictions.  Tr. 704.

On May 4, 2007, Plaintiff was treated at Chicanos Por La Causa, Inc. Behavioral Health Services ("CLPC").  Tr. 271.  He reported that his best friend died the year before, that his wife recently cheated on him, and that he has had problems managing his anger since these incidents.  *Id.*  He said that he worked outside and did yard work "in order to take his mind off of things," and that "this help[ed] him think of his actions."  *Id.*  He reported having attempted suicide by not taking his diabetic pills.  Tr. 394.  Plaintiff was rated a global assessment function score of 61, indicating mild symptoms.  Tr. 396-98, 812-13.  Later that month, Plaintiff had improved symptoms and a more stable mood.  Tr. 414.

In June 2007, Plaintiff stated that he could not sustain prolonged physical activity because his left leg becomes stiff and his back starts to "feel heavy."  Tr. 178.  He sometimes had trouble putting on his pants due to difficulty bending over and keeping his balance.  Tr. 182.  He handles his own finances, prepares his own meals, takes out the trash, cleans up, and shops for groceries once a week.  Tr. 184-87.  He likes to "fix

things" as a hobby.  Tr. 189.  He estimated that he could walk for an hour before having to rest, stand and sit for less than an hour, occasionally bend, frequently lift 10 pounds, occasionally lift 20 pounds, and occasionally reach his arms up and out.  Tr. 179.

At a July 24, 2007 follow-up visit with Dr. Abdalah, Plaintiff reported that his pain had not improved with physical therapy and that his pain now radiated to his left leg with numbness and tingling.  Tr. 525.

At the request of the Social Security Administration ("SSA"), Plaintiff attended a psychological examination with Dr. Armando A. Bencomo on August 16, 2007.  Tr. 438-43.  Dr. Bencomo diagnosed him with depressive disorder, adjustment disorder, mixed learning disorder by history, and mild stuttering.  Tr. 441.  Plaintiff was described as "depressed and situationally anxious," with poor short term memory.  *Id.*  "Psychiatric functional limitations which would affect his ability to work include: difficulty remembering and following directions; inconsistent energy and motivation affecting attendance and punctuality; [and] difficulty communicating effectively in a stressful situation due to stuttering."  *Id.*

In August 2007, Plaintiff also saw Dr. William Holland for a physical examination at the request of the SSA.  Tr. 444-50.  The only pain Plaintiff was experiencing was related to his feet and lower back.  Tr. 444.  He walked with a shuffling, slightly wide-based gait, and was able to go from lying to sitting and to get off of the examination table without assistance.  Tr. 445.  He could perform a 90-degree bend and assume an upright position without difficulty, and was able to do a full squat and stand without assistance or difficulty.  *Id.*  He could not jump.  *Id.*  He had 4/5 strength in his legs and 5/5 strength in his hands and arms.  *Id.*  Dr. Holland assessed Plaintiff with diabetes and lower back pain by history.  *Id.*  Dr. Holland opined that Plaintiff could lift and carry 20 to 40 pounds occasionally and 10 to 15 pounds frequently; sit, stand, and walk without limitation; frequently stoop, kneel, crouch, crawl, and climb ramps and stairs, occasionally climb ladders, and never climb scaffolds.  Tr. 447.

Around this time, Plaintiff returned to Dr. Abdalah with reports of pain radiating

into his left leg with numbness and tingling, and asserted that his symptoms had not improved with physical therapy.  Tr. 525. An August 17, 2007 MRI showed abnormal positioning of a vertebrae in Plaintiff's lower back (anterolisthesis) and a slight disc extrusion.  Tr. 517.  The record reflects one note from Dr. Abdalah stating that Plaintiff could not return to work (Tr. 516), but another note dated the same day stating that Plaintiff could return to work with restrictions, such as no lifting over 15 pounds and no bending, squatting, or continuous standing or waking (Tr. 533).  In November 2007, Dr. Abdalah administered the first in a series of epidural steroid injections.  Tr. 530-31.

Plaintiff continued to receive diabetes treatment at Maricopa Integrated Health System through May 2008.  Tr. 302-03, 305-06, 548-49, 551-52, 555-56, 558-59, 568-69, 616, 620, 628-29.  Sometimes his blood sugars were noted as uncontrolled, while at other times the care providers noted that his diabetes was "doing well" with treatment.  *See, e.g.*, Tr. 302, 548, 558.  In May 2008, nerve conduction studies indicated peripheral neuropathy in Plaintiff's left leg.  Tr. 777-79.

On May 3, 2008, Dr. John Prieve conducted a consultative examination of Plaintiff.  Dr. Prieve opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for two to four hours and sit for four hours "intermittently" during an eight-hour day; occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds.  Tr. 598-602.

Plaintiff continued to treat his pain through appointments with Dr. Abdalah in June and July 2008.  Dr. Abdalah noted that Plaintiff was stable on his medication. Tr. 767.  Plaintiff reported "some relief" from treatment in August and September 2008. Tr. 765.  Plaintiff also continued to receive counseling at CLPC through the summer of 2008.  He attended some counseling appointments, but often did not appear for his appointments as scheduled.  Tr. 415-17, 780-815.  He was discharged from treatment at CLPC for lack of contact with his provider.  *See* Tr. 780.

On October 22, 2008, Plaintiff met with Dr. Raymond Valdivia to obtain care for his diabetes.  Dr. Valdivia noted that Plaintiff was employed as a mechanic's assistant.

Plaintiff had stiffness in his hands, neuropathy in his left leg and foot, and discomfort in his lower back.  Dr. Valdivia provided Plaintiff with insulin for his diabetes and recommended over the counter medication and exercises for his back.  Tr. 826.

In mid June 2009, Plaintiff reported increased back pain after slipping and falling at home.  Tr. 732, 735-36.  A June 18, 2009 MRI of his lower back showed, among other things, a burst fracture of the T12 vertebrae (Tr. 752, 775-76), and Dr. Abdalah referred Plaintiff to a spine surgeon.  Tr. 752.

On July 29, 2009, Plaintiff sought an evaluation of his back from Dr. Edward Song.  Dr. Song diagnosed a T12 compression fracture, a herniated disc at L4-5, and spondylolisthesis with L5 deformation at L5-S1.  He ordered tests and instructed Plaintiff to return after testing was completed.  Tr. 738-52.

Dr. Valdivia continued to treat Plaintiff between late 2008 and early 2010.  His treatment notes indicate that Plaintiff's diabetes was poorly controlled.  Tr. 816-20, 822.  In May 2009, Dr. Valdivia assessed Plaintiff with depression related to chronic back pain and made a counseling appointment for him.  Tr. 822.  In September 2009, Dr. Valdivia noted that Plaintiff was "currently not working."  Tr. 819.  In December 2009, Dr. Valdivia noted that Plaintiff had an abscess on the bottom of his left foot.  Tr. 818.  In January 2010, Plaintiff admitted that he had not been compliant in terms of his diet, and that he had been consuming high calorie foods, soda pop, alcohol, and sweets.  Tr. 817.  Dr. Valdivia observed that Plaintiff had not followed up with Dr. Song or with Dr. Valdivia's prior referral to counseling.  Tr. 816.

On February 9, 2010, Plaintiff was treated at West Valley Hospital for dyspnea on exertion.  An echocardiogram revealed severely depressed LV function, and a heart catheterization revealed moderate pulmonary hypertension and a dilated left ventricle with severely depressed LV systolic function.  He was not discharged until February 20, 2010.  Tr. 833-34.

**B.    Hearing Testimony.**

During the April 16, 2010 administrative hearing, state agency psychologists

B. Hurwitz and Mark Stevenson reviewed the record and opined that Plaintiff retained the ability to do unskilled work.  Tr. 497-99, 502, 596.  State agency physicians Y. Shetty, R. Levy, and Ernest Griffith reviewed the record and opined that Plaintiff retained the ability to do light work.  Tr. 454, 456, 473-80, 603.

Plaintiff's counsel noted that Plaintiff had recently been hospitalized due to pneumonia, and that "obviously these are impairments that have not yet been in existence for 12 months, and his disability's premised on his back pain and his diabetes."  Tr. 39.

Plaintiff testified that he experienced back pain "all the time" and that physical therapy and injections had not helped.  Tr. 31.  The pain travels down both legs, but is worse on the left.  Tr. 30-31.  He said that his blood sugar levels were controlled by insulin.  Tr. 32-33.  He isolates himself because of depression and has difficulty concentrating and remembering "[o]nce in a while."  Tr. 34.  He can stand or sit for thirty minutes at a time before having to change positions due to pain in his lower back and legs.  Tr. 35-36.  He wakes up at night because of the pain.  *Id.*  He naps twice daily.  Tr. 37.  He testified that he cannot perform a job where he could sit, stand, and walk around and never had to lift more than ten pounds due to problems with walking, sitting, and concentrating.  Tr. 42.  He can drive short distances (Tr. 44), and his mother and son do most of the household chores (Tr. 46-47).  He uses a cane on occasion.  Tr. 52-53.  Plaintiff said that he stopped taking antidepressant medication because he "was taking too many pills at once."  Tr. 35.  He admitted that he was not attending counseling.  Tr. 49.  Despite his prior report of playing video games with his children and occasionally using a computer, Plaintiff asserted that he did not know how to play video games or use a computer.  *Compare* Tr. 189, 430 *with* Tr. 50-51.

Vocational expert Sandra Richter testified in response to a series of hypothetical questions from the ALJ.  Richter testified that an individual who could do sedentary work with occasional postural limitations and no climbing of ladders, ropes, or scaffolds could perform the unskilled sedentary work of a production worker or office clerk.  Tr. 56-57.  Richter testified that an additional requirement that the hypothetical individual be able to

sit or stand at will would eliminate both of those positions.  Tr. 57.   The ALJ then added mental limitations, and Richter testified that these mental limitations would preclude semi-skilled work.  Tr. 58-59.  Upon examination by Plaintiff's counsel, Richter testified that an individual with Plaintiff's mental and physical limitations would not be able to perform his past work and that there would be no other work that such an individual could sustain.  Tr. 60-62.

On April 22, 2010, the ALJ issued her decision.  Tr. 15-24.  She concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. § 404 (Tr. 18), that Plaintiff is unable to perform any past relevant work (Tr. 22), that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 23), and that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 12, 2007 through the date of the ALJ's decision (Tr. 23).

### C. Post-Hearing Developments.

On January 9, 2011, the SSA approved Plaintiff's subsequent application for benefits with an alleged onset date of April 23, 2010 (one day after the ALJ issued her decision).  Doc. 14, at 10.  The only issue needing resolution in the instant matter is Plaintiff's disability during the period of January 12, 2007 (the original alleged disability onset date) to April 22, 2010 (the date of the ALJ's decision).  *Id.*

## II. Standard of Review.

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  To determine whether substantial evidence supports Defendant's decision, the Court must review the administrative record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it.  *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998).  If there is

sufficient evidence to support Defendant's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III.    Analysis.**

Plaintiff claims that the ALJ erred by (1) failing to articulate sufficient reasons for rejecting Plaintiff's subjective complaints, (2) failing to properly weigh medical source opinion evidence, (3) finding that Plaintiff's depression was not severe, and (4) setting forth a deficient residual functional capacity ("RFC").  Doc. 14, at 12-24.  Plaintiff asks the Court to remand his case for a computation of benefits. *Id.* at 24.

**A.    Plaintiff's Subjective Complaints.**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant, however, 'need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted).  "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at 1037 (citations omitted).

At the first step, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms[.]"  Tr. 19.  Defendant does not dispute that Plaintiff has physical limitations, and recognizes that the ALJ found that he should be limited to a reduced range of sedentary work.  Doc. 17, at 12; Tr. 19.  Given that there is no dispute that Plaintiff's impairments could reasonably produce the alleged symptoms, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for

her adverse credibility finding.  *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  Plaintiff claims that the ALJ erred in the second step by finding that his assertions were not credible without sufficient specificity and explanation to satisfy the "clear and convincing" standard.  *See* Doc. 14, at 15-16 ("The ALJ did not explain which symptoms could reasonably be caused by [Plaintiff's] medically determinable impairments nor did she specify which of [Plaintiff's] statements were not credible.  Federal courts have repeatedly criticized such generalized credibility findings.").

"In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *see Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995).  The ALJ gives the following reasons for her adverse credibility finding: the objective medical evidence does not corroborate the severity of Plaintiff's symptom testimony, the level of treatment Plaintiff received does not correspond to his allegations, records indicate that Plaintiff worked as a mechanic's assistant in October 2008 despite his testimony that he had not worked since 2007, and Plaintiff was able to sit for nearly an hour at his administrative hearing without appearing to be in pain or requesting permission to stand.  Tr. 21-22.

### 1.    Medical Evidence and Level of Treatment.

"Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimants subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain."  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell v. Sullivan*,

947 F.2d 341, 345-48 (9th Cir. 1991) (en banc)); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff argues that, notwithstanding the fact that the ALJ may not discredit his pain testimony solely based on lack of corroborating medical evidence, his complaints are substantiated by an MRI, nerve conduction studies, physical examinations, and medical findings. Doc. 14, at 16-17. *See, e.g.*, Tr. 755 (a 2009 MRI follow-up at which Plaintiff indicated "lower back pain" as his chief complaint and complained of "even more pain," yet also noted that his pain had been relieved by medication); Tr. 777 (nerve conduction study on May 22, 2008 noting "low back pain, numbness and tingling in left lower extremity for 2 [year] duration" in Plaintiff's patient history); Tr. 636 (Maricopa Integrated Health System progress note dated July 2, 2007 indicating that Plaintiff had "low back pain"); Tr. 334-35 (a January 2007 physical examination indicating that Plaintiff's chief complaint was "back pain and leg pain"). Plaintiff also argues that, with respect to the level of treatment he received, he has undergone numerous injections without lasting relief and met with a spine specialist who advised that surgery was a possibility but that there was only a fifty percent chance of improvement. Doc. 14, at 17.

In her decision, the ALJ states that "[t]he objective medical evidence, while supportive of some level of impairment, simply does not corroborate the severity of [Plaintiff's] subjective reports nor does the level of treatment he has received correspond to his allegations." Tr. 21. Plaintiff was treated primarily with pain medication, which indicated conservative treatment relative to his pain testimony. Tr. 21. While Plaintiff testified to taking psychiatric medications at one time, the ALJ found no evidence in the

record to establish this fact. *Id.* Rather, the ALJ found that "the record does not support a finding that [Plaintiff's] mental health issues were more than episodic reactions to life stressors that have since resolved." Tr. 21-22. Furthermore, Plaintiff failed to seek further treatment for his back pain from Dr. Song. Tr. 21. The ALJ specifically notes that Plaintiff "was not consistent in following his medical regimen regarding his diabetes and as a result saw elevated blood sugars," (Tr. 20), "Dr. Abdalah prescribed pain medication and Elavil to help [Plaintiff] sleep," (Tr. 20), "[t]here are no further records from [Dr. Song] and his primary care physician's records indicate that as of January 2010 [Plaintiff] has not seen Dr. Song again," (Tr. 21), and "[Plaintiff's] most recent treatment has consisted of pain medications and medication to help him sleep" (Tr. 21). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Defendant's decision. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)). On this basis, the Court accepts the inconsistency between the objective medical evidence and Plaintiff's testimony as a reason for the ALJ to discredit Plaintiff's complaints.

### 2. Work History.

The ALJ reached an adverse credibility determination due in part to ambiguous evidence in the record regarding Plaintiff's work history. "[Plaintiff] testified that he last worked in 2007, but his primary care provider's records indicate he was working as a mechanic's assistant in October 2008." Tr. 22. "There are no earnings recorded from this employment," so the ALJ did not consider it for purposes of assessing past relevant work or substantial gainful activity, but noted that "assuming the doctor's records are accurate[,] it suggests [Plaintiff] was able to perform work related activities despite his impairments." Tr. 22; *see* Tr. 826 (October 22, 2008 treatment record from Dr. Valdivia indicating that Plaintiff "is employed as a mechanic assistant").

Defendant argues that this evidence further contradicts Plaintiff's assertions of extreme limitations in functioning. Doc. 17, at 15 (citing 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are

able to do more work than you actually did.")).  Plaintiff objects that Dr. Valdivia's reference to Plaintiff's work as a mechanic's assistant is uncorroborated and that the ALJ erred by simply "assuming the doctor's records are accurate[.]"  Doc. 14, at 18 (quoting Tr. 22).  Plaintiff argues that the note "references his occupation and not [his] work activity, and that because the ALJ had an opportunity to question Plaintiff about the perceived discrepancy in the medical record but chose not to do so, she cannot now attack his credibility on that point.  *Id.*

The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  *Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Ambiguous evidence, or the ALJ's own finding that that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  *Smolen*, 80 F.3d at 1288; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998) (concerning ambiguous disability onset date).  The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Smolen*, 80 F.3d at 1288.

The ALJ clearly relied upon Dr. Valdivia's note when discounting Plaintiff's pain testimony.  Tr. 22.  She did not specifically find that the note was ambiguous.  In *Tonapetyan v. Halter*, the ALJ likewise did not find that the evidence was ambiguous or that he lacked sufficient evidence to render a decision.  The Ninth Circuit nonetheless concluded that the ALJ failed to develop the record fully and fairly because he relied heavily on the testimony of a medical expert who did find the evidence ambiguous and specifically recommended a more detailed report.  *Tonapetyan*, 242 F.3d 1144, 1150 (9th Cir. 2001).  An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing

*Tonapetyan*, 242 F.3d at 1150).  In *Mayes*, the Ninth Circuit concluded that the ALJ had no duty to develop the record because the record "was neither ambiguous nor inadequate to allow for proper evaluation of the evidence."

Here, there is nothing to suggest that the ALJ would have reason to find ambiguity in Dr. Valdivia's notes, which unequivocally state with respect to Plaintiff: "He is employed as a mechanic assistant."  Tr. 826.  Furthermore, the ALJ did not rely on Dr. Valdivia's note to make a determination on Plaintiff's overall disability, as in *Tonapetyan* and *Mayes*, or to weigh the opinion of medical examiners, as in *Smolen*. Instead, the ALJ properly noted the discrepancy between Dr. Valdivia's note and Plaintiff's testimony as a basis for her adverse credibility finding.  Tr. 22; *see Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  Plaintiff may not avoid the effect of such discrepancies on his credibility by casting them as "ambiguous" and asking the ALJ to resolve them.  To the extent that Plaintiff argues that Dr. Valdivia's note is ambiguous because Plaintiff's earnings record does not confirm the work activity (Doc. 14, at 18), the ALJ acknowledged the lack of earnings record in her decision and accounted for it in her credibility determination (Tr. 22).  The Court accepts the inconsistency between Dr. Valdivia's note and Plaintiff's testimony as a reason for the ALJ to discredit Plaintiff's complaints.

### 3.    ALJ Observations.

The ALJ relied on her personal observations of Plaintiff during the April 16, 2010 administrative hearing.  She noted that "claimant testified at the hearing that he is only able to sustain sitting, standing or walking for half hour intervals before he needs to change position, yet he sat through the hearing for nearly one hour without appearing to be in pain or requesting that he be permitted to stand."  Tr. 22.

Plaintiff contends that the ALJ may not rely on her own observations to discredit him when his testimony has been corroborated by objective evidence.  Doc. 14, at 18. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 19 (emphasis added). In *Coats v. Heckler*, the Ninth Circuit concluded that "the ALJ improperly rejected the opinion of Coats' doctor regarding the severity of the impairment based upon his observations of the claimant's behavior at the hearing. To be sure, the ALJ could properly disregard Coats' self-serving statements to the extent they were unsupported by objective findings." *Coats v. Heckler*, 733 F.2d 1338, 1340 (9th Cir. 1984). The Ninth Circuit has since clarified that the ALJ may rely on her own observations as long as these observations are not the sole basis for discrediting Plaintiff's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("The ALJ's observations of a claimant's functioning may not form the sole basis for discrediting a person's testimony."); *Tonapetyan*, 242 F.3d at 1148 ("Neither may the ALJ rely on his own observations of the claimant at the hearing as the sole reason for rejecting the claimant's complaints."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("The inclusion of the ALJ's personal observations does not render the decision improper.") (citation omitted). To the extent that some of Plaintiff's complaints are not supported by the medical evidence, the ALJ was not precluded from relying in part on her own observations when weighing Plaintiff's credibility. *See* Tr. 19.

Plaintiff also opposes the ALJ's reliance on her own observations because the ALJ "only viewed [Plaintiff] through a video conference and not in person," but has not cited any authority suggesting that observations made by video conference are prohibited. Doc. 14, at 18. Plaintiff suggests that the video was not "particularly clear," given that the ALJ could not see scarring on Plaintiff's arm when referred to by counsel at the hearing. Doc. 14, at 19 n.8; Tr. 41. Plaintiff has not explained how he was prejudiced by the teleconference or how an in-person hearing would have changed the credibility determination, nor does he claim that the video was so unclear that the ALJ could not accurately observe that he "sat through the hearing for nearly one hour." Tr. 22.

In sum, the ALJ properly relied on the inconsistency between the objective

medical evidence and Plaintiff's pain testimony, the inconsistency in Plaintiff's work history, and Plaintiff's appearance during the hearing, and has thus articulated "specific, clear and convincing reasons" for her adverse credibility finding.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The Court concludes that there is substantial evidence to support the ALJ's credibility determination.  *See Tonapetyan*, 242 F.3d at 1148.

**B.   Weight Accorded to Dr. Bencomo's Opinion.**

Plaintiff argues that the ALJ failed to properly weigh medical source opinion evidence.  Doc. 14, at 20.  Plaintiff specifically challenges the weight given to Dr. Bencomo's opinion.  *Id.* at 21-22.  Dr. Bencomo conducted a consultative psychological examination of Plaintiff in August 2007.  Tr. 438-42.  He diagnosed Plaintiff with depressive disorder, adjustment disorder with anxiety, mixed learning disorder by history, mild stuttering, avoidant traits, and insulin dependent diabetes with neuropathy.  Tr. 441.  Dr. Bencomo opined that Plaintiff had psychiatric functional limitations that would affect his ability to work, including "difficulty remembering and following directions, inconsistent energy and motivation affecting attendance and punctuality, and difficulty communicating effectively in a stressful situation due to stuttering."  *Id.*  He also opined that Plaintiff would have mild limitations performing simple job tasks; mild to moderate limitations performing within a schedule and sustaining an ordinary routine without special supervision; and moderate to marked limitations performing more complicated tasks, remembering and carrying out detailed instructions, and responding appropriately to criticism.[3]  Tr. 442.  At the administrative hearing, the vocational expert testified that a hypothetical person with these restrictions would not be able to perform any of Plaintiff's past work or sustain any other work.  Tr. 59-60.

The reason the ALJ states for giving Dr. Bencomo's opinion little weight was that

---

[3] The ALJ describes Dr. Bencomo's findings as "mild to moderate limitations performing more complicated tasks, responding to criticism from supervisors and adapting to stressful situations."  Tr. 20.  However, the record indicates that Dr. Bencomo felt Plaintiff would be "moderately to markedly limited" in these respects.  Tr. 442.

"it was authored in 2007 and does not reflect the progress [Plaintiff] made in counseling, nor the fact that as of June 2008 [Plaintiff] no longer needed counseling." Tr. 20. The Ninth Circuit has explained that conclusory reasons will not justify an ALJ's rejection of a medical opinion. "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the [required] level of specificity[.] The ALJ must do more than offer his own conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Regennitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Plaintiff argues that the ALJ improperly discredited Dr. Bencomo's examination "simply by alleging that [Plaintiff] improved subsequent to the evaluation." Doc. 14, at 22. While the fact that Plaintiff improved subsequent to Dr. Bencomo's evaluation may not "invalidate [his] findings on the day of the evaluation" (Doc. 14, at 22), such improvement may be a basis for the ALJ to give less weight to the opinion. But the ALJ did not cite evidence in the record she relied on to conclude that Plaintiff's mental health had improved. As a result, the ALJ has not articulated sufficiently specific reasons for discounting Dr. Bencomo's opinion. The Court independently notes a May 24, 2007 CPLC client progress note indicating that Plaintiff "reports less DTO tendencies and mood appears more stable in session." Tr. 809. The CPLC therapist observed that Plaintiff's "[s]table mood may be due to rapport building" with the therapist. *Id.* Other CPLC progress notes indicate that Plaintiff "appears motivated and willing to seek treatment." Tr. 808. He was sometimes "engaged" in the counseling sessions (Tr. 789, 792, 803, 807) and other times "tearful" during the sessions (Tr. 808). Several of the progress notes indicate that Plaintiff had a "depressed" mood. Tr. 803, 807, 808. This Circuit has made clear that an ALJ's rejection of testimony is in error and not supported by substantial evidence where the ALJ has "selectively focused on aspects of [medical records] which tend to suggest non-disability[.]" *Edlund v. Massanari*, 253 F.3d 1152,

1159 (9th Cir. 2001); *see Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (finding that the ALJ erred by relying on selective portions of the doctor's treatment notes and failing to read his statements in the "context of the overall diagnostic picture he [drew]").  The Court cannot determine whether the ALJ selectively relied on the medical evidence because she has not set forth the relevant evidence she considered.

Additionally, the record indicates that Plaintiff was terminated from CPLC not because he "no longer needed counseling" as the ALJ found (Tr. 20), but because he failed to make contact with the agency (Tr. 780).  The ALJ notes that Plaintiff's "attendance at counseling was sporadic," that he "missed several appointments between October 2007 and January 2008," and that he was ultimately discharged from treatment in June 2008 for lack of contact with his provider.  Tr. 19-20.  Plaintiff's abandonment of counseling is not at odds with his depression diagnosis.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (quotation omitted); Tr. 808 ("[Plaintiff] has support from family and friends but[] feels embarrassed since they know what happened.").

The Court concludes that the ALJ's reasons for rejecting Dr. Bencomo's opinion are insufficient under Ninth Circuit law.  The ALJ did not specify the evidence upon which she relied, making it impossible to understand the precise reasons for her conclusion and to assess whether she selectively considered the evidence.

###     C.    Plaintiff's Mental Impairment.

Whether a claimant is disabled is determined using a five-step sequential evaluation process.  The claimant bears the burden in steps one through four.  To establish disability the claimant must show (1) he is not currently working, (2) he has a severe medically determinable physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity (RFC) precludes him from performing his past work.  20 C.F.R. § 416.920(a).  At step five, the Commissioner bears the burden of showing that the claimant has the RFC to perform

other work that exists in substantial numbers in the national economy.  *Id.*

Defendant submits that whether the ALJ found Plaintiff's depression to be a severe impairment at step two "is not legally relevant since the ALJ proceeded beyond step two of the sequential evaluation and assessed Plaintiff's residual functional capacity between steps three and four."  Doc. 17, at 20.  The regulations provide: "[a]t the second step, [the ALJ] consider[s] the medical severity of [Plaintiff's] impairment(s).  If [he] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [Plaintiff is] not disabled."  20 C.F.R. § 404.1520(a)(4)(ii).  Because the ALJ found that Plaintiff's mental impairment were not severe at step two (Tr. 17-18), she did not need to proceed to the remaining steps on that ground.  She did, however, find that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, peripheral neuropathy, diabetes, T12 fracture, and Grade I spondylolisthesis.  Tr. 17.  Therefore, she properly continued the five-step sequential evaluation process on those grounds.  The Court cannot agree, however, with Defendant's assertion that the ALJ's "nonsevere" rating of Plaintiff's mental impairment is not legally relevant simply because the ALJ proceeded with the five-step evaluation on other grounds; her findings at step two inform the remainder of the analysis.  "If an ALJ finds a severe impairment at step two, that impairment must be considered in the remaining steps of the sequential analysis."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  The Court will not disregard the ALJ's analysis at step two simply because she proceeded to conduct a residual functional capacity assessment.

The Court must determine whether the ALJ properly found that Plaintiff's mental impairment was nonsevere at step two.  Plaintiff contends that the ALJ erred by using the factors applied at step three to assess whether a claimant has a presumptively disabling impairment that meets or equals one of the listed impairments, instead of the factors used at step two to assess whether a claimant has established a severe impairment.  Doc. 14,

at 23-24.  At step two, Plaintiff argues that the de minimis standard described in *Smolen* should apply:

> [T]he ALJ must consider the combined effect of all of the claimant's impairments on [his] ability to function, without regard to whether each alone was sufficiently severe.  Also, [the ALJ] is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity.  Finally, the step-two inquiry is a de minimis screening device to dispose of groundless claims.   An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).  Defendant responds that the ALJ properly considered the four areas of mental functioning in evaluating Plaintiff's mental impairments: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Doc. 17, at 20, n.8; *see* 20 C.F.R. §§ 404.1520a(c)(2)-(3).  Defendant contends that the ALJ's discussion of these four functional areas does not indicate that she applied the wrong standard. Doc. 17, at 20 n.8; *see* Tr. 17-18.

The Court finds no evidence in the relevant regulation indicating that the four functional areas may be applied to step three but not to step two.  The de minimis standard set forth in *Smolen* reflects the language of the regulation: "If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is *more than a minimal limitation* in your ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1) (emphasis added).  The ALJ concluded that because Plaintiff's medically determinable mental impairment causes no more than "mild" limitation in the first three functional areas, and there were no episodes of decompensation of extended duration, his mental impairment is "nonsevere."  Tr. 18. This was the proper analysis.

Finally, Plaintiff reiterates his argument that the ALJ should not have discounted

Dr. Bencomo's opinion.  Doc. 14, at 24.  The ALJ did not, as Defendant claims, discount Dr. Bencomo's opinion because it was "contradicted by the treatment record" (Doc. 17, at 22), but because "it was authored in 2007 and does not reflect the progress [Plaintiff] made in counseling, nor the fact that as of June 2008 [Plaintiff] no longer needed counseling."  Tr. 20.  *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").  For the reasons previously discussed, the Court finds that the ALJ has not articulated substantial reasons for giving little weight to Dr. Bencomo's opinion.  The ALJ addressed Dr. Bencomo's opinion in the context of her RFC analysis (*see* Tr. 19-20), and it is unclear how much the fact that she discounted his opinion affected her determination at step two that Plaintiff's mental impairment was nonsevere.

### D.   RFC Determination.

#### 1.   Sit/Stand Option.

The ALJ gave "considerable weight" to the consultative examiners, Drs. Holland and Prieve, and the reviewing physician, Dr. Shetty, but did not adopt their opinions in their entirety.   Tr. 21.   The ALJ did, however, "adopt[] the limits contained in the opinions as stated."  *Id.*  Dr. Holland opined that Plaintiff would be limited to lifting 20 to 40 pounds occasionally, 10 to 15 pounds frequently, standing/walking 6-8 hours and sitting 6-8 hours during an 8-hour work day, occasionally climbing stairs and ramps, and never climbing ropes, ladders, or scaffolds.  *Id.*  Dr. Prieve opined that Plaintiff would be limited to lifting/carrying 20 pounds occasionally, 10 pounds frequently, standing/ walking 2-4 hours and sitting 4 hours in an 8-hour work day, occasionally climbing stairs or ramps, stooping, kneeling, crouching, and crawling, and never climbing ropes, ladders, or scaffolds.  *Id.*  Dr. Shetty's opinion essentially mirrors Dr. Prieve's aside from an increase in Plaintiff's ability to stand and walk to 6 hours in an 8-hour work day.  *Id.*  The ALJ concluded that Plaintiff has an RFC that allows him to perform "less than the full range of sedentary work[.]"  Tr. 19.

Plaintiff does not dispute the weight given to the opinions of Drs. Holland, Prieve,

and Shetty, but argues that "[s]uch an RFC necessitates the need for a sit/stand option, since the individual would only sit or stand/walk intermittently throughout the day." Doc. 14, at 20-21.  At the administrative hearing, the ALJ asked the vocational expert whether there were jobs that existed in the economy at the sedentary, unskilled level. Tr. 56-57.  The vocational expert responded that a production worker and office clerk were two examples of such sedentary, unskilled jobs.  *Id.*  The ALJ then asked whether the addition of a sit/stand option would eliminate those two jobs, and the vocational expert said that it would.  Tr. 57.  The vocational expert testified that there would be no jobs at a sedentary, unskilled level that would allow for a sit/stand option.   Tr. 57. Plaintiff argues that, if he needs a sit/stand option, then he is entitled to an award of benefits based on the facts of this case.  Doc. 14, at 22.

In her decision, the ALJ did not address the additional limitation of a sit/stand option.  Citing to the vocational expert's examples of production worker and office clerk, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform."  Tr. 23.

Plaintiff has not, however, cited to evidence in the record indicating that any of the doctors opined that a sit/stand option was necessary.  The strongest evidence to this effect seems to be Dr. Prieve's remarks that Plaintiff "has limitations on standing and walking, but should be able to stand or walk 2-4 hours *intermittently* throughout an eight-hour day" and "should be able to sit four hours *intermittently* in an eight-hour day."  Tr. 601 (emphasis added).  In light of Dr. Holland's opinion that Plaintiff could stand or walk for 6-8 hours and sit for 6-8 hours in an 8-hour day, and Dr. Shetty's opinion that Plaintiff could stand and walk for 6 hours in an 8-hour day, the ALJ's decision not to assess a sit/stand option was a rational one, and the Court will not disturb it.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985) ("If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ.").

## 2. Function-by-Function Assessment.

Plaintiff also argues that the RFC was deficient because the ALJ cannot classify an RFC in terms of a category of work, but must set forth a function-by-function assessment of work-related limitations.  Doc. 14, at 22-23.  Defendant does not dispute that the ALJ did not set forth a function-by-function assessment of Plaintiff's ability to sit, stand, and walk, but argues instead that function-by-function assessments are not always necessary. Doc. 17, at 19.

Before determining Plaintiff's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess [his] work-related abilities on a function-by-function basis[.]"  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  Only after an appropriate function-by-function assessment "may RFC be expressed in terms of the exertional levels of work[.]"  *Id.*; *see Reed v. Massanari*, 270 F.3d 838, 843 n.2 (9th Cir. 2001).  This sequential evaluation process is important because absent "careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the [ALJ] may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do[.]"  SSR 96-8p, at *4.  Failure to perform a function-by-function assessment ultimately "could make the difference between a finding of 'disabled' and 'not disabled.'"  *Id.*

Here, the ALJ acknowledged her obligations under SSR 96-8p, but failed to meet them.  The ALJ discussed the "paragraph B" functional criteria identified at Section 12.00 of the Listing of Impairments:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Tr. 18.  Citing SSR 96-8p, the ALJ recognized that the RFC assessment "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B" (Tr. 18), but she did not translate the paragraph B criteria into specific work-related functions in her RFC determination (*see* 20 C.F.R. § 404.1545(c) (These functions include, among other things, "responding appropriately to supervision, co-workers, and work pressures in a work setting[.]")).

Defendant argues that a function-by-function analysis is not always necessary. Doc. 17, at 19; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.") (citing SSR 96-8p).  The Court has noted that the ALJ did not provide sufficient reasons for discounting Dr. Bencomo's opinion of Plaintiff's mental health.  She therefore should have conducted a function-by-function analysis of Plaintiff's mental health condition.

Defendant also asserts that a function-by-function assessment is implicit in the ALJ's finding that Plaintiff can perform "less than a full range of sedentary work." Doc. 17, at 19-20.  SSR 96-8p requires more than implicit findings.  The ALJ "must *discuss* the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and *describe* the maximum amount of each work-related activity the individual can perform[.]"  SSR 96-8p, at *7 (emphasis added). Merely citing the regulation "is insufficient to fulfill the function-by-function and narrative requirements under SSR 96-8p."  *Sharma v. Astrue*, No. C 07-4906 MEJ, 2008 WL 4540992, at *6 (N.D. Cal. Oct. 6, 2008).  The ALJ's failure to perform a function-by-function assessment of Plaintiff's work-related abilities before determining his RFC renders the ALJ's decision susceptible to the errors described in SSR 96-8p, and thus constitutes legal error.

**IV.    Remedy.**

The decision to remand for further development of the record or for an award benefits is within the discretion of the Court.  42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000).  This Circuit has held that an action should be remanded for an award of benefits where the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true.  *See, e.g.*, *Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988).

After applying the credit-as-true rule to the improperly discredited evidence, no outstanding issue remains to be resolved before determining that Plaintiff is entitled to benefits.   The vocational expert testified that the mental limitations found by Dr. Bencomo, if adopted along with Plaintiff's physical limitations, would preclude Plaintiff from performing his past work and that there would be no other work that he could sustain.  Tr. 60-62.  The Court will remand the case for an award of benefits.  *See Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007) (remanding for an award of benefits where it was "'clear from the record that the ALJ would be required to determine the claimant disabled'") (citation omitted).

**IT IS ORDERED:**

1.      Defendant's decision denying benefits is **reversed**.

2.      This case is remanded for an award of benefits.

Dated this 30th day of April, 2012.


_____
David G. Campbell
United States District Judge

- 25 -